IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MICHAEL V. ESPEJO,         )   CIV. NO. 14-00095 HG-RLP
                          )
          Plaintiff,     )
                          )
                          )
        vs.            )
                          )
                          )
LOCKHEED MARTIN OPERATIONS   )
SUPPORT, INC.; RICHARD T. DUNN; )
BRANDO LADINES; REX LADINES,   )
                          )
          Defendants.    )

---

**ORDER GRANTING DEFENDANTS LOCKHEED MARTIN OPERATIONS SUPPORT, INC. AND RICHARD T. DUNN'S MOTION FOR DISMISSAL SANCTION DUE TO PLAINTIFF'S INTENTIONAL SPOILATION OF EVIDENCE
(ECF No. 63)**

Plaintiff brought suit in Circuit Court of the First Circuit, State of Hawaii against his former employers Lockheed Martin Operations Support, Inc. and Lockheed Martin Corporation, his supervisors, and other employees. Plaintiff claims that he was subject to retaliation and wrongful termination, after he informed a supervisor that certain employees were illegally gambling at the work site. Plaintiff alleges claims for violation of the Hawaii Whistleblowers' Protection Act and intentional infliction of emotional distress.

Defendants Lockheed Martin Operations Support, Inc. and Lockheed Martin Corporation removed the action to Federal Court,

asserting that Plaintiff's claims arise under federal law. Lockheed Martin Corporation and four employee defendants were subsequently dismissed from the action.

Plaintiff moved to remand the action to Hawaii State Court. On May 30, 2014, the Court entered an order denying Plaintiff's Motion for Remand. (ECF No. 47.)

Defendants Lockheed Martin Support, Inc. and Richard T. Dunn now move to dismiss the instant lawsuit, with prejudice, and for an award of reasonable attorneys' fees and costs to Defendants as a sanction for Plaintiff's intentional spoilation of evidence. (ECF No. 63.)

Defendants Lockheed Martin Support, Inc. and Richard T. Dunn's Motion for Dismissal Sanction (ECF No. 63) is **GRANTED**.

## PROCEDURAL HISTORY

On December 5, 2013, Plaintiff Michael V. Espejo filed a Complaint in the Circuit Court of the First Circuit of the State of Hawaii against Lockheed Martin Operations Support, Inc.; Lockheed Martin Corporation; Richard Dunn; Timothy Ahern; Jo Ann Viloria; Brando Ladines; Rex Ladines; Ralph Kirk; and Jean J. Copp.

On December 27, 2013, Plaintiff filed a First Amended Complaint in the Circuit Court of the First Circuit of the State of Hawaii.

On January 31, 2014, Plaintiff filed a Second Amended Complaint in the Circuit Court of the First Circuit of the State of Hawaii. (Notice of Removal Ex. A, ECF No. 1.)

On February 26, 2014, Defendants Lockheed Martin Operations Support, Inc. and Lockheed Martin Corporation removed the action to the Hawaii Federal District Court. (ECF No. 1.)

On March 24, 2014, Plaintiff filed a Motion for Remand to State Court. (ECF No. 18.)

On April 4, 2014, a Stipulation and Order was filed dismissing, without prejudice, Plaintiff's claims alleged in the Second Amended Complaint against Lockheed Martin Corporation; Timothy Ahern; Jo Ann Viloria; Ralph Kirk; and Jean J. Copp.

The Stipulation and Order also dismissed, without prejudice, certain claims alleged against the four remaining Defendants, Lockheed Martin Operations Support, Inc., Richard Dunn, Brando Ladines, and Rex Ladines, as follows:

**Count I** (Retaliation and Discrimination in Violation of Hawaii's Whistleblower Protection Act, Haw. Rev. Stat. § 378-62): dismissed without prejudice as to Richard Dunn, Brando Ladines, and Rex Ladines;

**Count II** (Tortious Interference with Employment and Economic Opportunities): dismissed without prejudice as to all remaining Defendants;

**Count III** (Intentional Infliction of Emotional Distress): dismissed without prejudice as to Defendant Lockheed Martin Operations Support, Inc.;

**Count IV** (Negligent and/or Reckless Retention and/or Hiring and/or Supervision): dismissed without prejudice as to all remaining Defendants; and

**Count V** (Ratification, Additional Conduct, and Punitive Damages): The claims for Ratification and "Additional Conduct" were dismissed without prejudice as to all remaining Defendants.[1] Plaintiff reserved the right to seek punitive damages.

The following claims remain:

**Count I:** Violation of the Hawaii Whistleblowers' Protection Act, Haw. Rev. Stat. § 378-62, <u>alleged against</u> Lockheed Martin Operations Support, Inc; and

**Count III**: Intentional Infliction of Emotional Distress, <u>alleged against</u> Defendants Richard Dunn, Brando Ladines, and Rex Ladines.

(ECF No. 31.)

On April 7, 2014, Defendant Lockheed Martin Operations Support, Inc. filed an Opposition to the Motion for Remand. (ECF No. 33.)

On April 14, 2014, Plaintiff filed a Reply. (ECF No. 40.)

On May 16, 2014, the Court held a hearing on the Motion for Remand.

---

[1]    The Second Amended Complaint incorrectly numbers the claim for Ratification, Additional Conduct, and Punitive Damages as Count IV.

On May 30, 2014, the Court entered an order denying
Plaintiff's Motion for Remand. (ECF No. 47.)

On August 28, 2014, Defendants Lockheed Martin Operations
support, Inc. and Richard T. Dunn filed MOTION FOR DISMISSAL
SANCTION DUE TO PLAINTIFF'S INTENTIONAL SPOILATION OF EVIDENCE.
(ECF No. 63.)

On September 12, 2014, Plaintiff filed an Opposition to
Defendants' Motion. (ECF No. 65.)

On October 9, 2014, Plaintiff filed a Supplemental
Opposition. (ECF No. 70.)

On October 23, 2014, Defendants filed a Reply. (ECF No. 74.)

On November 10, 2014, this matter came on for hearing.


## BACKGROUND


Plaintiff Michael V. Espejo's suit arises from allegedly
retaliatory acts that occurred during his employment with
Lockheed Martin Operations Support, Inc. ("Lockheed Martin
Operations"), a federal military contractor. Plaintiff worked for
Lockheed Martin Operations at Pearl Harbor as a Senior Tech IV.
(2d Am. Compl. at ¶ 25, ECF No. 1.)

Plaintiff's employment with Lockheed Martin Operations was
governed by a Collective Bargaining Agreement between Lockheed
Martin Information Systems & Global Solutions and the

International Association of Machinists and Aerospace Workers, AFL-CIO. (Decl. of Jean J. Copp at ¶ 3, Collective Bargaining Agreement attached as Ex. A, ECF No. 33.)

**Plaintiff's Reporting of the Alleged Misconduct**

Plaintiff alleges that, between July and September 2012, certain Lockheed Martin Operations employees were engaged in illegal gambling activity and misrepresenting their time worked. The gambling was allegedly carried out through the Navy Marine Corp Intranet ("NMCI") network, the computer network used by the Navy and Marine Corps. Plaintiff believed that the activity posed a security threat to the NMCI network and Navy/Marine Corps database. (2d Am. Compl. at ¶ 27.)

Plaintiff claims that he anonymously reported the misconduct to Lockheed Martin Operations's ethics hotline, but the misconduct continued. (2d Am. Compl. at ¶ 27.)

On December 17, 2012, Plaintiff alleges that he reported the misconduct to Supervisor Timothy Ahern. According to Plaintiff, he requested that his identity be kept confidential to avoid retaliation. He states that Supervisor Ahern assured him that his identity would not be revealed, and requested that Plaintiff report the misconduct to Lockheed Martin Operations's Human Resources Agent Teresa Alarcio. (2d Am. Compl. at ¶¶ 28-30.)

On the following day, Plaintiff claims he reported the
alleged misconduct to Human Resources Agent Alarcio. Plaintiff
states that he again requested, and was assured, that his
identity would remain confidential. (2d Am. Compl. at ¶ 31.)

**Alleged Disclosure of Plaintiff's Identity as a Whistleblower**

According to the Complaint, on December 19, 2012, the day
after Plaintiff made the report to the Human Resources Agent,
Plaintiff began to suffer retaliation from other employees.
Plaintiff alleges that Supervisor Ahern disclosed Plaintiff's
identity to Defendant Richard Dunn, Plaintiff's direct
supervisor. He states that Defendant Dunn disclosed Plaintiff's
identity to other employees. (2d. Am. Compl. at ¶ 34.)

**Alleged Retaliation**

Plaintiff alleges that, as a result of the disclosure of his
identity, he was subjected to various forms of retaliation for
approximately eight months, resulting in the constructive
termination of Plaintiff.

Plaintiff claims that he was subjected to ongoing social
isolation, verbal and non-verbal threats, and other forms of
harassment by fellow employees. Defendants Brando Ladines and Rex
Ladines are specifically identified as perpetrators of the
harassment. (2d. Am. Compl. at ¶¶ 35-36.)

According to Plaintiff, on multiple occasions, he was subjected to disciplinary action or threatened with disciplinary action, based on false allegations. (2d Am. Compl. at ¶¶ 38-39, 64-65, and 67.) Plaintiff states that he was required to undergo a fitness for work evaluation, which was imposed to devise a pretext to terminate him. (Id. at ¶¶ 47-53.) Defendant Dunn allegedly attempted to revoke Plaintiff's security clearance to enter the work site, without having a legitimate basis to take such action. (Id. at ¶ 66.)

Plaintiff also claims that supervisors attempted to create adverse relationships between Plaintiff and other employees by spreading false information about Plaintiff. (2d Am. Compl. at ¶¶ 40, 57-61, 74.) According to Plaintiff, Defendant Dunn would actively warn other employees against associating with Plaintiff. (Id. at ¶¶ 53, 56.)

Plaintiff states, in the Complaint, that he reported the retaliation to Lockheed Martin Operations on multiple occasions. Lockheed Martin Operations allegedly failed to properly investigate Plaintiff's complaints. (2d Am. Compl. at ¶¶ 37, 41-46.)

**Termination of Plaintiff's Employment**

On August 8, 2013, Plaintiff claims that he tendered his resignation to Lockheed Martin Operations, as he could no longer tolerate the ongoing harassment and retaliation. (2d Am. Compl. at ¶ 68.)

**Post-Employment Allegedly Retaliatory Conduct**

Plaintiff alleges that Lockheed Martin Operations's retaliatory conduct continued after his constructive discharge. Plaintiff claims that Lockheed Martin Operations attempted to deprive him of his unemployment benefits, by submitting false information regarding the circumstances of Plaintiff's termination. (2d Am. Compl. at ¶¶ 71-73.)

Plaintiff claims that, in January 2014, while applying for a job, he learned that Lockheed Martin Operations had submitted an incident report to the Department of Defense security clearance database, the Joint Personnel Adjudication System ("JPAS"). The incident report, submitted by Lockheed Martin Operations on or about December 18, 2013, allegedly resulted in a "red flag" being placed on Plaintiff's JPAS clearance. A "red flag" would limit Plaintiff's ability to work at certain jobs. (2d Am. Compl. at ¶¶ 75-82.)

Plaintiff claims that Lockheed Martin Operations should not have been able to submit an incident report four months after Plaintiff's employment ended. Plaintiff alleges that Lockheed

Martin Operations unlawfully failed to complete the JPAS

Separation process, in order to maintain its administrative right

to submit incident reports to JPAS and "red flag" Plaintiff's

clearance. (2d Am. Compl. at ¶¶ 75-83.)

**Facts Relevant to Defendants' Claim of Intentional Spoilation of Evidence**

<u>**Defendants' Discovery Requests**</u>

On March 12, 2014, counsel for the parties met to hold a

Fed. R. Civ. P. 26(f) conference of the parties. (ECF No. 63-4,

Motion, Declaration of Darin Leong ("Leong Decl.") ¶ 6.) During

the conference, defense counsel reminded Plaintiff's counsel of

Plaintiff's duty to preserve all evidence, particularly

electronic evidence such as recordings. (<u>Id.</u>) On March 19,

2014, Lockheed Martin served Plaintiff with formal discovery

requests. (Motion, at Leong Decl. ¶ 7, Exh. F.) Lockheed Martin

requested: (1) documents about Plaintiff's whistleblowing; (2)

documents showing gambling at the facility; (3) Plaintiff's

surreptitious recordings; (4) documents showing Plaintiff's job

searches and mitigation of damages; (5) documents proving

Plaintiff's emotional distress; (6) documents about Plaintiff's

sexual harassment of a co-worker; (7) Plaintiff's memos and

diaries; (8) notes and emails about the harassment Plaintiff

allegedly suffered; and (9) communications between Plaintiff and

his Union. <u>Id.</u> Plaintiff kept these categories of documents on

his personal computer. (ECF No. 63-5, Motion at Exh. B, Pl.

Depo. at pp. 35-36, 177-85.)  The files on Plaintiff's personal computer also included audio recordings made by Plaintiff on his Sony audio recording device and transferred by him to his computer.

**Defendants' Contentions**

Defendants contend that, while Lockheed Martin's formal discovery requests were pending, Plaintiff intentionally deleted and destroyed massive amounts of relevant evidence.  The evidence at issue falls into the following categories:

(1) **Plaintiff's personal computer**.  Defendants contend that Plaintiff ran software to permanently erase all information on his computer, then drilled a hole in his hard drive and threw it away.  The computer contained Plaintiff's entire email account, including emails about his whistleblowing, alleged harassment, employment, job searches, and communications with witnesses. (ECF No. 63-5, Motion at Exh. B, Pl. Dep. at pp. 35-36, 177-85.) Plaintiff's computer also contained personal daily memos about the alleged harassment and audio recordings.  (Id. at pp. 177-85, 415.)  Defendants contend that Plaintiff's computer may have also contained other relevant evidence that will now never be recovered.  Defendants requested this information in discovery.

Defense counsel also requested production of Plaintiff's computer.  In response, on August 12, 2014, Plaintiff's counsel stated that Plaintiff's computer was destroyed in April of 2014

and that Plaintiff ran a program that rewrites data on the hard drive, drilled into the hard, and then disposed of the computer in the trash. (ECF No. 63-12, Leong Decl. ¶ 8, Exh. G.)

(2) **Audio recordings taken from Plaintiff's Sony recorder and placed on his computer**. Plaintiff used a hard disk Sony audio recorder to record conversations with people at work. (ECF No. 63-5, Motion at Exh. B, Pl. Depo. at pp. 177-78, 181-82.) Plaintiff transferred the audio recordings from the Sony device to his personal computer. Plaintiff copied the files that he deemed relevant to a USB flash drive and produced them to Defendants in discovery. Plaintiff produced to Defendants audio recordings of Defendants and witnesses taken with his Sony recorder that he had transferred to his computer.

During his deposition, Plaintiff testified that he deleted many of the recordings from the Sony audio recorder because the recorder could only hold about two to six hours of audio. (ECF No. 63-5, Motion at Exh. B, Pl. Depo. at p. 178.) Some of the recordings were made in top secret areas of the Navy/Lockheed Martin torpedo facility. (Pl. Depo. at pp. 42-43, 182-83.) Defendant Richard Dunn, a Technical Program Manager with Lockheed Martin, has submitted a declaration stating that Plaintiff's recording in secret areas of the United States Navy facility was a terminable offense, in direct violation of the United States Navy and Lockheed Martin rules and could potentially subject

Plaintiff to military prosecution. (ECF No. 63-2, Declaration of Richard T. Dunn at ¶ 6.) Defendants contend that, if not destroyed, these recordings would have provided additional support for their position that Lockheed Martin would have had grounds to terminate Plaintiff had he not resigned.

Following Plaintiff's deposition, on July 20, 2014, defense counsel sent Plaintiff's counsel an email requesting production of the Sony recorder in order to review the two to six hours of recordings that were on the Sony recorder. (Leong Decl. at ¶ 3, ECF No. 63-4, Motion at Exh. C.) On July 23, 2014 at 12:41 p.m., Defendants' counsel sent Plaintiff's counsel a follow up email regarding the request for inspection. (ECF No. 63-7, Motion at Exh. D.) In response, Plaintiff's counsel sent an email saying that, while he had a different interpretation of the case law cited by defense counsel in support of the request, he would recommend to Plaintiff that he produce the recorder for Defendant Lockheed Martin's inspection. (Id.)

Defendants contend that just four hours after Defendants' reminder request for Plaintiff's computer, at 4:51 p.m. on July 23, 2014, Plaintiff completely erased and reformatted all data on the recorder. In support of their contention, Defendants point to a report prepared by their expert, discussed below, and the short time period between their second request for production of the recorder and the destruction of all evidence on it.

Defendants also point out that Plaintiff was technologically adept. Plaintiff had experience using recording technology and editing software. (ECF No. 74-2, Supplemental Declaration of Darin R. Leong ("Supp. Leong Decl.") at Exh. H, Pl. Depo. at p. 39:2-12.) He was technically capable of recording on his Sony recorder, transferring those files to his computer and then to a USB flash drive, using audio software to edit the recordings, converting audio files to different formats, and renaming the files. (ECF No. 65-1, Espejo Decl. at ¶¶ 5, pp. 12-13.)

In the July 23, 2014 email, Plaintiff's counsel also addressed production of Plaintiff's personal computer for inspection. Plaintiff's counsel stated that he believed Plaintiff no longer had the computer in his possession and that he would check to see if Plaintiff had given it away or had disposed of it in the rubbish. (ECF No. 63-7, Motion at Exh. D.)

**Defendants' Expert Report regarding destruction of all data on Sony recorder**

In support of their argument regarding the Sony recorder, Defendants point to a forensic analysis of the Sony recorder performed by their expert, digital forensic examiner, Jerry Hatchett. Mr. Hatchett has provided an expert report regarding his examination of, and conclusions regarding, the Sony recording device. (ECF No. 63-8, Motion at Exh. E ("Report on Digital Forensic Examination by Jerry Hatchett"), hereinafter "Hatchett Report".) After examining the device, Mr. Hatchett concluded

14

that the FORMAT function, which was run on July 23, 2014 at 4:51 p.m. destroyed all data and recording on the device. (Hatchett Report at ¶ 8.) The destruction occurred just four hours after defense counsel's email to Plaintiff's counsel reminding him of their request to produce the Sony recorder and Plaintiff's counsel's representation that he would recommend to Plaintiff that he produce the recorder.

**Plaintiff's Discovery Responses**

**Plaintiff's statements about his personal computer during his deposition**

Defendant contends that Plaintiff lied at his deposition because he said that he still had his computer when, in fact, he did not. On July 9, 2014, Plaintiff testified at his deposition that he was still in possession of the computer and could try to access certain recordings of key witnesses. (ECF No. 63-5, Motion at Exh. B, Pl. Depo. at pp. 35-36, 180-81.) At that time, Plaintiff had already destroyed his computer. (ECF No. 65-1, Declaration of Michael V. Espejo ("Espejo Decl.") at ¶¶ 7-8.)

**Plaintiff's production of an audio recording of a conversation between Plaintiff and his supervisor, Tim Ahern**

Plaintiff produced a 30 second clip of a recorded conversation between him and his supervisor, Tim Ahern. (Leong Decl. at ¶ 5.) Plaintiff alleges that the audio recording provides evidence of his constructive discharge. (Sec. Am. Compl. at ¶¶ 67-68.) At his deposition on July 15, 2014,

Plaintiff testified that this recorded conversation may have involved a discussion of classified information. (ECF No. 63-5, Motion at Exh. B, Pl. Depo. at pp. 242-43.) Defense counsel asked if Plaintiff had edited the recording. (Pl. Depo. at p. 246.) Plaintiff responded: "There's no edits on any recording." (<u>Id.</u>) Plaintiff also testified that he started and stopped the recorder precisely when the clip starts and ends. (<u>Id.</u> at 242-46.)

**Defendants' Expert Report regarding fragmented audio recording of Ahern conversation**

Defendants submit that a forensic analysis of the clip shows that Plaintiff edited the audio clip. In particular, that it was from a larger clip and pasted in redacted form. (Hatchett Report at ¶¶ 9-17.) Defendants suggest that Plaintiff did so to hide the fact that he had recorded top secret information or information that supports Lockheed Martin's defenses or undermines Plaintiff's claims. In his expert report, Mr. Hatchett states that he examined the recording of the conversation with Mr. Ahern. (Hachett Report at ¶ 9.) Mr. Hatchett examined the recording to determine whether it had been created as described in Plaintiff's testimony. (<u>Id.</u>) Mr. Hatchett conducted an aural examination in which he listened for a "click" or "pop" which is often evidence of the beginning or ending of a recording. (<u>Id.</u> at ¶ 10.) He did not hear a "click" or "pop". (<u>Id.</u>) Mr. Hatchett also conducted a visual

16

examination. (<u>Id.</u> at ¶ 11.) He opened the recording in a software application capable of generating a waveform, a visual representation, of the recording. (<u>Id.</u>) He could not discern evidence of the beginning or ending of the recording. (<u>Id.</u>) According to Mr. Hatchett, the Sony recording device used creates an artifact any time the recorder is either paused or stopped. (<u>Id.</u> at ¶ 12.) The artifact is a brief "click" sound and a noticeable spike in the waveform. (<u>Id.</u>) Mr. Hatchett concluded that the Ahern recording did not have a stop artifact. (<u>Id.</u> at ¶ 13.) Mr. Hatchett further concluded that the Plaintiff's explanation of how the Ahern recording was created does not match the forensic evidence and that the Ahern recording was an incomplete fragment of a larger recording. (<u>Id.</u> at ¶¶ 13, 19.)

Defendants further point out that, due to Plaintiff's destruction of his personal computer, they are unable to tell whether Plaintiff used software on his computer to edit other recordings.

**<u>Plaintiff's Explanations</u>**

Plaintiff contends that in an effort to document the retaliation he allegedly suffered at work he recorded conversations with a number of his co-workers and others and prepared emails to Mr. Ahern and others summarizing the retaliation he suffered. (ECF No. 65, Pl. Opp. at p. 3.) Plaintiff contends that he did not engage in the intentional

spoilation of evidence because he has, in fact, produced audio recordings, emails or other communications.  (<u>Id.</u>)

Plaintiff submits his Declaration in support of his Opposition.  (ECF No. 65-1, Espejo Decl. at ¶¶ 4-5.)  Plaintiff acknowledges that prior to March 12, 2014, his counsel informed him of his responsibility to preserve all evidence in his case. (<u>Id.</u> at ¶ 3.) Plaintiff submits that he has complied and has produced all evidence to Defendants.  (<u>Id.</u> at ¶ 4.)

(1) **Plaintiff's personal computer**. Plaintiff acknowledges that the personal computer at issue contained information relevant to this case, in particular, notes and emails, job applications since his allegedly constructive discharge from Lockheed Martin, and audio and video recordings that he made in relation to the case. (Espejo Decl. at ¶ 6.)  In his declaration, Plaintiff testifies that prior to the due date for production of discovery, he copied files that he considered relevant to his case from his personal computer on to a flash drive and provided it to his counsel.  (<u>Id.</u> at ¶ 5.)

Plaintiff then explains what happened to the personal computer.  Plaintiff states that it belonged to his mother-in-law and that he and other family members in his household used it. (<u>Id.</u> at ¶¶ 6-7.)  The personal computer was used to store family photographs, prepare personal emails, and to perform financial transactions. (<u>Id.</u> at ¶ 8.) In April of 2014, the personal

computer began to run slowly and failed to start up properly because of the presence of malware.  (_Id._ at ¶ 7.)  Plaintiff explains that this is why his family purchased a replacement computer. (_Id._)  Because of the personal nature of the information on the computer, Plaintiff ran a software program that erased all of the data on it before discarding it.  (_Id._ at ¶ 8.)  He also drilled into the computer's hard drive so that sensitive personal data files could not be recovered.  (_Id._)  Plaintiff testifies that he has used this same data erasing procedure for the last seven computers his family has discarded. (_Id._)

Plaintiff next offers an explanation as to his deposition testimony about the personal computer.  At his deposition, Plaintiff responded to questions by defense counsel about the computer as if he still had access to the information on it.  He admits that he answered questions where he stated that he could still try to get on the computer to pull files.  (_Id._ at ¶ 9.)  Plaintiff attempts to make a distinction between a question about whether he had access to information on the computer versus whether he still had physical possession of the actual computer.  He claims that, during his July 2014 deposition, he was never specifically asked if he still had the computer and did not testify that he still had it.  (_Id._)  He explains that he never intended to mislead anyone into believing that the computer was

still in his possession. (Id.) He further explains that this is why, once he recalled that the computer had been discarded, he immediately notified his attorney. (Id.)

Plaintiff appears to make a distinction between the obligation to preserve all evidence and any requirement that he keep the computer itself. In his declaration, Plaintiff states that he copied files *pertaining to his* case from his personal computer onto a flash drive. Plaintiff does not state that he copied *all* files. He admits that the files copied were the files that Plaintiff considered relevant to his case. Plaintiff states that Defendants did not inform him he should preserve the computer at any time prior to his discarding of it. (Id. at ¶ 10.) He explains that it never occurred to him that the Defendants would need to examine the computer itself because, in his view, he had provided Defendants with all evidence that he had prepared relating to his case. (Id.) Plaintiff submits that if Defendants had specifically requested that he preserve his personal computer, he would have readily done so. (Id. at ¶ 11.)

(2) **Audio recordings on Plaintiff's Sony recorder**.
Plaintiff's declaration also addresses Defendants' allegations regarding the Sony audio recording. He declares that to the best of his recollection, he did not alter the audio recording of his conversation with Ahern. (Id. at ¶ 12.) While maintaining that he did not alter the audio recording, Plaintiff acknowledges that

he "may have edited" it "to remove the discussion of matters not related to my case." (Id. at ¶ 13.) Plaintiff also acknowledges that he converted the original electronic format of the audio files that he produced into a WAV file format. (Id.) Consistent with his deposition testimony, Plaintiff states that he deleted audio digital files from the Sony audio recorder in order to maintain free memory space to record. (Id. at ¶ 14.) Finally, Plaintiff disputes Defendants' expert, Mr. Hatchett's conclusion that the FORMAT function had been run on the Sony audio recorder. At least, Plaintiff claims that *he*, to the best of his recollection, did not any time run a FORMAT function on the Sony digital recorder. (Id. at ¶ 14.)

**Plaintiff's Expert**

Plaintiff has retained electronic data forensic expert, Michael McMurdo, to address the report of Defendants' expert, Jerry Hatchett. Mr. McMurdo, has prepared an expert report, dated October 3, 2014. (ECF No. 70-2, Pl. Supp. Opp. at Exh. 1, Letter from Michael McMurdo to Plaintiff's counsel ("McMurdo Report".) Plaintiff has not provided the Court with a CV or resume for Mr. McMurdo.

Mr. McMurdo addresses two assertions in Mr. Hatchett's Report: (1) that the format function had been run on Plaintiff's Sony recorder, thereby destroying all data and recordings; and

21

(2) that the recorded conversation with Ahern is an incomplete fragment of a larger conversation.

**Mr. McMurdo's opinion as to destruction of all data on the Sony recording device**

Mr. McMurdo's assessment concurs with Mr. Hatchett's assessment that the format or reformat function had been run on the device. (McMurdo Report at p. 2.) According to Mr. McMurdo, on the Sony recording device at issue, the reformat function is a three step process, requiring the user to select settings, select common settings, and select "reformat". (ECF No. 70-1, Declaration of Counsel at ¶ 3.)

**Mr. McMurdo's opinion as to audio recording of a conversation between Plaintiff and his supervisor, Tim Ahern**

Mr. McMurdo also concurs with Mr. Hatchett's assessment that the Ahern recording did not contain a startup or ending click or blip. Mr. McMurdo concludes that the beginning and ending of the file has been removed, but asserts that "there is no way of knowing whether or what sounds (if any) were removed." (ECF No. 70-2, McMurdo Report at p. 2.)

**Supplemental Report by Defendants' Expert**

In Reply, Defendants provide a supplemental expert report by Mr. Hatchett. (ECF No. 74-3, Reply at Exh. I ("Supp. Hatchett Report".) Mr. Hatchett provides a detailed explanation of the process for reformatting the Sony digital recorder. Mr. Hatchett explained that the process for deleting a single file is very

different from the process for reformatting the entire device and could not be easily confused. He explains that, contrary to Mr. McMurdo's statement, 18 button presses are required to reformat the digital recorder. (Supp. Hatchett Report at ¶ 18.) In contrast, to delete a single recording requires on 5 button presses. (Id.) Mr. Hatchett has provided the Court with a video demonstration of these two processes. (ECF No. 74-4, Reply at Exh. J.)

Mr. Hatchett also reviewed the other recordings Plaintiff made with his Sony recorder and transferred to his computer prior to providing them to Defendants. Plaintiff produced 37 recordings from the Sony recorder. It is undisputed that these recordings contain evidence relevant to this case. Mr. Hatchett concluded that 27 of these recordings were edited in the same manner as the Ahern recording. (Supp. Hatchett Report at ¶¶ 8-12.) The extensive process Mr. Hatchett used to examine these recordings and reach this conclusion is detailed in his supplemental report. Mr. Hatchett examined 5 other recordings produced by Plaintiff made with his smart phone, a Samsung Galaxy S3 device, and concluded that 4 of those had also been edited or altered. (Supp. Hatchett Report at ¶¶ 13-14.)

Mr. Hatchett also explains that Plaintiff did not need to convert the audio files to a different format on his computer (from the original format to a .WAV format) in order to play them

back.  (Supp. Hatchett Report at ¶ 19.)  Mr. Hatchett explains
that the Sony device records in .WAV format, that it was
configured to record in this format when he received it for
inspection, and that the 10 unaltered files produced by Plaintiff
were in .WAV format.  (<u>Id.</u>)  Mr. Hatchett concludes that there
was no reason for Plaintiff to convert or otherwise alter the
files in order to play them back.  (<u>Id.</u>)

**<u>Summary of Relevant Facts</u>**

**Disposal of personal computer**

Plaintiff destroyed all data on, and disposed of, the
personal computer on which he maintained relevant files, after
this litigation began and after counsel had told him to preserve
all evidence.  Plaintiff explains that Defendants did not
specifically request that he preserve his computer before he
destroyed it and that he thought that he was complying with the
requirement to preserve evidence by saving the files that he
thought were important.  Defendants argue that Plaintiff's
intentional destruction of his computer is evidence of bad faith.
Plaintiff has acknowledged that he maintained relevant evidence
on his computer. Defendants now have no way of obtaining and
examining the original data.

**Deletion of all data from Sony recorder**

Plaintiff's expert and Defendants' expert concur that the
deletion of all data and files on the Sony recording device was

due to execution of the format or reformat function. Plaintiff testifies that he does not remember reformatting the device. Defendants argue that it must have been Plaintiff who deleted the data because of the timing of when the data was deleted. All data and recordings were deleted from the device approximately four hours after defense counsel reminded Plaintiff's counsel that Defendants had requested production of the device and Plaintiff's counsel said that he would contact Plaintiff and recommend that he produce the device. In his declaration, Plaintiff does not offer an alternative explanation of how all data was deleted. Plaintiff's counsel argues that it is highly likely Plaintiff may have accidentally reformatted the device while intending only to delete the most recent recording of a visit with one of his doctors. Defendants rebut this through expert testimony contrasting the process for deleting a file with reformatting the entire device.

**Fragmented recording of Plaintiff's conversation with Ahern**

After examining the audio file, both Plaintiff's expert and Defendants' expert concur that the recording of Plaintiff's conversation with Ahern is a fragment of the original. There is no genuine dispute that Plaintiff edited the recording. In his deposition, Plaintiff states that he does not recall altering the recording, but that he may have edited it to remove the discussion of matters not related to his case.

## STANDARD OF REVIEW

"Dismissal is an available sanction when 'a party has
engaged deliberately in deceptive practices that undermine the
integrity of judicial proceedings' because 'courts have inherent
power to dismiss an action when a party has willfully deceived
the court and engaged in conduct utterly inconsistent with the
orderly administration of justice.'" Leon v. IDX Systems Corp.,
464 F.3d 951, 958 (9th Cir. 2006)(quoting Anheuser-Busch, 69 F.3d
at 348 (internal quotation marks and citations omitted). "Before
imposing the 'harsh sanction' of dismissal, however, the district
court should consider the following factors: '(1) the public's
interest in expeditious resolution of litigation; (2) the court's
need to manage its dockets; (3) the risk of prejudice to the
party seeking sanctions; (4) the public policy favoring
disposition of cases on their merits; and (5) the availability of
less drastic sanctions.'" Id. (quoting Anheuser-Busch, 69 F.3d at
348) (footnote omitted).

The district court need not make explicit findings regarding
each of these factors. See United States ex rel. Wiltec Guam,
Inc. v. Kahaluu Constr. Co., 857 F.2d 600, 603 (9th Cir. 1988).
But, "a finding of 'willfulness, fault, or bad faith' is required
for dismissal to be proper. Leon, 464 F.3d at 958 (quoting
Anheuser-Busch, 69 F.3d at 348) (citation omitted). The district

court must also consider "less severe alternatives" than outright dismissal. <u>Wiltec Guam</u>, 857 F.2d at 604.


<b><u>ANALYSIS</u></b>

**I.   <u>Intentional Destruction of Evidence in Bad Faith</u>**

"A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" <u>Leon v. IDX Systems Corp.</u>, 464 F.3d 951, 959 (9th Cir. 2006) (quoting <u>United States v. Kitsap Physicians Serv.</u>, 314 F.3d 995, 1001 (9th Cir. 2002) (emphasis added) (internal quotation marks and citation omitted).  "Moreover, because 'the relevance of ... [destroyed] documents cannot be clearly ascertained because the documents no longer exist,' a party 'can hardly assert any presumption of irrelevance as to the destroyed documents.'" <u>Id.</u> (quoting <u>Alexander v. Nat'l Farmers Org.</u>, 687 F.2d 1173, 1205 (8th Cir. 1982)).

**A.   Plaintiff Willfully Spoiled Relevant Evidence**

The Court finds that Plaintiff engaged in willful spoliation of evidence.

**1.   *Plaintiff's destruction of personal computer***

It is undisputed that the computer used and destroyed by Plaintiff contained relevant evidence and that Plaintiff knew this.  (ECF No. 65-1, Espejo Decl. at ¶ 6.)  Yet, Plaintiff

deleted all files from, and physically destroyed, the computer in April 2014.  Plaintiff did so four months after he initiated the lawsuit and one month after he received Defendant Lockheed Martin's discovery requests.

The duty to preserve evidence is triggered as a matter of law once a party "knows or reasonably should know the evidence is potentially relevant to litigation when the destruction of that evidence prejudices the opposing party." <u>United States ex rel. Berglund v. Boeing Co.</u>, 835 F.Supp.2d 1020, 1050 (D. Ore. 2011). Plaintiff acknowledges that he knew he had an obligation to preserve evidence.  Plaintiff knew that his computer contained relevant evidence. (Espejo Decl. at ¶ 6.)  In fact, Plaintiff copied some files from his computer onto his flash drive and provided it to his counsel before destroying the computer. (Espejo Decl. at ¶ 5.)  Plaintiff also had actual notice to preserve evidence on the computer.  Plaintiff's counsel instructed him to preserve evidence both before the case began and on March 12, 2014.  (ECF No. 65, Pl. Opp. at p. 3.)  Lockheed Martin served Plaintiff with document requests on March 19, 2014. (ECF No. 14.)  The document requests specifically requested Plaintiff to preserve evidence on his electronic devices. Lockheed Martin's March 19, 2014 document requests included within the definition of "documents", among other things, computer or data processing card, computer or data processing

28

disk, computer-generated matter, and tape or phonograph

recording. (ECF No. 63-11, Motion at Exh. F, Lockheed Martin's

First Request for Production of Documents at 2-4.) Lockheed

Martin also specifically requested information on Plaintiff's

electronic devices, including his computer and Sony recorder.

Defendant's request was for *unedited* video, tape, digital or

other audio or visual recordings. (<u>Id.</u> at Requests Nos. 24-28,

48-52.)

Plaintiff argues that he was not expressly told to preserve

the computer itself at the time he destroyed it. Whether or not

he was expressly told to preserve the computer itself, Plaintiff

had ample notice of his obligation to preserve all evidence on

it. Plaintiff selected evidence which he believed was relevant

and then knowingly deleted the remaining data and physically

destroyed the computer. Plaintiff is not permitted to

unilaterally chose what evidence he produces in discovery. <u>See</u>

<u>Leon</u>, 464 F.3d at 956-957 ("[The plaintiff did not have the

authority to make unilateral decisions about what evidence was

relevant in this case."). Plaintiff destroyed his computer in the

midst of ongoing discovery. Such conduct supports a finding of

bad faith.

### 2. ***Plaintiff's editing of the Ahern recording and other recordings***

Plaintiff admits that he may have edited the Ahern

recording. (Espejo Decl. at ¶ 12.) Plaintiff explains that he

would have done so to remove the discussions not relevant to the case. (Id.) Plaintiff offers no alternative explanation as to why the Ahern recording is not a complete recording. 31 other audio recordings produced by Plaintiff were also edited. Plaintiff's declaration does not address the other audio recordings (raised in Defendants' reply), but there is good reason to believe that it was also Plaintiff who edited these recordings.

As discussed above, it was not within Plaintiff's discretion to determine which portions of the recordings would be relevant to the case. There is no way to recover the complete recordings. The recordings at issue are recordings of Plaintiff's interactions with other Lockheed Martin employees. In this case, Plaintiff claims that he was retaliated against for whistleblowing. The recordings contain evidence relevant to Plaintiff's claims and Defendants' defenses.

There is also evidence of bad faith. During his deposition, Plaintiff testified that he did not edit the Ahern recording. (ECF No. 63-5, Motion at Exh. B, Pl. Depo. at 236:16.) Plaintiff's statement was not true. Plaintiff attempts to correct this by explaining in his declaration that he may have deleted a portion of the Ahern recording that he did not deem relevant. He then tries to pass off the edits as immaterial. Plaintiff's testimony, during his deposition, that he did not

edit any recordings, including the other 31 recordings, is not credible.  The fact that he now admits he may have deleted portions of the Ahern recording, combined with the lack of any other plausible explanation, strongly suggests that it was Plaintiff who edited the other recordings.  The evidence supports the Court's finding that, after secretly editing the recordings, Plaintiff attempted to cover up his conduct by falsely testifying that he did not edit any recordings.  This is evidence of bad faith.  The Court finds that Plaintiff willfully spoiled evidence in bad faith.

### 3. *Deletion of all data on the Sony recorder*

On July 23, 2014, Defendants' counsel reminded Plaintiff's counsel of their request to produce the recorder.  Plaintiff's counsel responded that he would contact Plaintiff and recommend that he produce the Sony recorder.  Both Plaintiff's and Defendants' experts agree that there was removal of data from the computer.  They also agree it was caused by performing a reformat function.  The Sony recorder was reformatted on July 23, 2014, just four hours after defense counsel reminded Plaintiff's counsel about Defendants' request that Plaintiff produce the recorder.  As Mr. Hackett explains, performing the reformat function requires 18 steps that are very different than just the 5 steps necessary to delete a file.

The Court does not find credible the contention that Plaintiff unintentionally reformatted the Sony recorder. Also, incredulous is Plaintiff's testimony that he does not recall reformatting the Sony recorder. It is highly likely that it was Plaintiff who removed all data from the device by reformatting it. The evidence shows that Plaintiff had experience using recording technology and editing software. (ECF No. 74-2, Supplemental Declaration of Darin R. Leong ("Supp. Leong Decl.") at Exh. H, Pl. Depo. at p. 39:2-12.) Plaintiff was technically capable of recording on his Sony recorder, transferring those files to his computer and then to a USB flash drive, using audio software to edit the recordings, converting audio files to different formats, and renaming the files. (ECF No. 65-1, Espejo Decl. at ¶¶ 5, 12-13.) Plaintiff's explanation that he accidentally reformatted the device and that this accidental reformat happened the very day that his counsel contacted him about producing the device to Defendants is not plausible. The Court finds that Plaintiff engaged in the willful spoliation of evidence and attempted to cover up his actions.

This case is substantially similar to the Ninth Circuit's decision in Leon, 464 F.3d 951. Leon also involved a claim for wrongful termination based on whistleblower retaliation. In that case, the plaintiff produced his laptop for examination pursuant to a discovery request. A forensic examination of the

plaintiff's laptop revealed that the laptop's hard drive had been intentionally deleted. Id. at 956. In his deposition, the plaintiff, in Leon, admitted that he deleted personal files and claimed that he was merely negligent in removing other evidence. Id. The evidence, however, showed that the plaintiff ran a wiping program despite being on notice that the laptop contained files relevant to the lawsuit. Id. at 952. The Ninth Circuit upheld the district court's determination that the plaintiff had willfully spoiled relevant evidence and that such conduct prejudiced defendants. Id. at 960-61; see also Volcan Group, Inc. v. Omnipoint Communications, Inc., 552 Fed.Appx. 664 (9th Cir. 2014) (upholding district court's dismissal due to plaintiff's spoilation of evidence).

The evidence of willful spoilation is even stronger in this case than in Leon. In this case, Plaintiff not only deleted all files from his computer and destroyed it, he also destroyed all the data on his Sony recorder. He secretly edited the Ahern recording along with at least 27 other recordings. Plaintiff, unlike the plaintiff in Leon, attempted to cover up his conduct by lying under oath at his deposition.

## II.  Risk of Prejudice to Defendants

"The prejudice inquiry 'looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision

33

of the case.'" <u>Leon</u>, 464 F.3d at 959 (quoting <u>Wiltec Guam</u>, 857

F.2d at 604 (citation omitted)); <u>see</u> <u>Anheuser-Busch, Inc. v.</u>

<u>Natural Beverage Distributors</u>, 69 F.3d 337, 354 (9th Cir. 1995)

(finding prejudice when a party's refusal to provide certain

documents "forced Anheuser to rely on incomplete and spotty

evidence" at trial.)

### A. Plaintiff Has Severely Prejudiced Defendants by Destroying Highly Relevant Evidence

Plaintiff's destruction of relevant evidence has severely

prejudiced Defendants.  In this case, Plaintiff claims that he

was subject to retaliation and wrongful termination, after he

informed a supervisor that certain employees were illegally

gambling at the work site.  To prevail on his claims, Plaintiff

has the burden of proving that he engaged in a whistleblowing

activity, and that, as a result, he was retaliated against.

Defendants' theory of the case is that Plaintiff had plans to

resign at least a few months before his allegedly constructive

discharge.  In defending the case, Defendants would also argue

that Plaintiff has not suffered damages because Lockheed Martin

had grounds to terminate him before his allegedly constructive

discharge.  The deleted recordings or portions of the recordings

contained classified information.  (Pl. Depo. 242-43.)  According

to Defendants, this is a direct violation of government rules

which could have subjected him to criminal prosecution.

During his deposition, Plaintiff acknowledged that documents
he kept on the computer and the recordings he made with the Sony
recorder were relevant evidence.  Plaintiff's computer, for
instance, contained his entire email account, including emails
complaining about harassment which he never produced, his plans
to resign from employment, and job applications to other
employers.  (Pl. Depo. at 34, 36, 165, 254-55.)

Defendants have also provided a detailed list of the
relevant documents that were or could have been found on the
computer or Sony recorder. (ECF No. 74, Reply at pp. 20-21.)
Such relevant evidence includes recordings that could have shown
Plaintiff's work conditions were not intolerable and deleted
recordings or portions of recordings containing classified
information in direct violation of government rules and
potentially subjecting Plaintiff to criminal prosecution.  (Id.)
Defendants also suspect that Plaintiff's computer might have
contained evidence of illegal gambling.  (Id.)  The very conduct
about which Plaintiff allegedly blew the whistle.  As a basis for
their suspicion, Defendants point out that when, during
Plaintiff's deposition, defense counsel asked Plaintiff if he
engaged in illegal gambling, Plaintiff invoked the Fifth
Amendment.  (ECF No. 63-5, Pl. Depo. at p. 70-71.)

There is no way of recreating the computer or the audio
files that have been destroyed.  As such, Plaintiff's "discovery

violations make it impossible ... to be confident that the parties will ever have access to the true facts." Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1097 (9th Cir. 2007) (citation omitted).

Other courts have found dismissal to be an appropriate remedy in similar circumstances. See Volcan Group, Inc. v. Omnipoint Communications, Inc., 552 Fed.Appx. 644 (9th Cir. 2014), U.S. ex rel. Berglund v. Boeing Co., 835 F.Supp.2d 1020, 1051 (D.Or. 2011)(by discarding the hard drives from his home computer, plaintiff impaired defendant's ability to obtain potentially relevant and discoverable communications and dismissal of retaliation claim was appropriate sanction).

## III.  **Availability of Less Drastic Sanctions**

In considering the availability of less drastic sanctions before dismissing a party's case, the district court must discuss the feasibility of less drastic sanctions and explain why such alternate sanctions would be inappropriate. Leon, 464 F.3d at 960. If applicable, the district court must also implement alternative sanctions before ordering dismissal and warn the party of the possibility of dismissal before ordering dismissal. Id.

### A.   **Possible alternative sanctions**

The Court finds that less drastic sanctions would not

sufficiently compensate for Plaintiff's widespread destruction of evidence. The possible discovery sanctions set out in Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii) provide guidance as to possible alternative actions: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). Fed. R. Civ. P. 37(b)(2)(A)(iii). Subsections (iv), (vi) and (vii) are inapplicable based on the present facts. Defendants are seeking the relief provided in subsection (v) - dismissal. Subsections (i) and (ii) provide the only possible alternatives for the Court to consider.

The sanction of designating that certain facts be taken as true (Fed. R. Civ. P. 37(b)(2)(A)(i)) does not provide a viable option. It is not possible to fashion an order directing certain facts be taken as true that would not essentially amount to a

directed verdict for the Defendants.  Even if the Court fashioned

a jury instruction providing a rebuttable presumption in

Defendants' favor, Defendants would still suffer difficulties in

rebutting any evidence presented by Plaintiff in attempting to

overcome the presumption.  See Leon, 464 F.3d at 960.

The remedy in Fed. R. Civ. P. 37(b)(2)(A)(ii) – prohibiting

Plaintiff from supporting designated claims or opposing

designated defenses – presents a similar problem.  Here,

Plaintiff has destroyed a significant amount of evidence central

to his case. Prohibiting Plaintiff from presenting his

whistleblower claim would be tantamount to dismissing the case.

It would also not be a workable remedy for the Court to prevent

Plaintiff from challenging Defendant Lockheed Martin's defense

that Plaintiff was not constructively discharged, but rather, had

plans to quit months before he resigned.  If Lockheed Martin

prevailed on this defense, it would win the case.  Lockheed

Martin, however, is prevented from building this defense because

Plaintiff has destroyed the relevant evidence.  Upon

consideration of the possible alternative remedies, the Court

finds that they are either unavailable or inadequate in this

case.

### B.    Implementation of alternative sanctions

The second consideration is whether the district court can,

or has, implemented alternative sanctions before ordering

dismissal.  The Court, as did the Court in <u>Leon</u>, finds that the second consideration does not apply.  Plaintiff has destroyed the evidence before the Court could "compel discovery or otherwise order 'lesser sanctions.'" <u>Leon</u>, 464 F.3d at 960.

### C.    Warning of dismissal sanction

The third consideration is whether the district court can, or has, warned the party of the possibility of dismissal before ordering dismissal.  As with the second consideration, and also as the court found in the <u>Leon</u> case, the third consideration does not apply.  The evidence has already been destroyed.  Any warning by the Court that Plaintiff's case would be dismissed if he did not produce the evidence would be futile.  <u>See</u> <u>Leon</u>, 464 F.3d at 960; <u>see</u> <u>Malone v. U.S. Postal Service</u>, 833 F.2d 128, 133 (9th Cir. 1987)(failure to warn is unnecessary in certain circumstances).

## IV.  <u>Public Policy Considerations and Court's Need to Manage Its Docket</u>

The public policy in favor of disposing of cases on their merits weighs against dismissal as a sanction.  On the facts before the Court here, this factor is not sufficient to outweigh the other factors favoring dismissal. <u>See</u> <u>Leon</u>, 646 F.3d, 960-61.  Given the extensive spoilation of relevant evidence by Plaintiff, it would not be possible to fairly evaluate this case on the merits.  <u>See</u> <u>Boeing Co</u>., 835 F.Supp.2d at 1053-54 (public policy favoring resolution on the merits was outweighed by plaintiff's

39

continuing misconduct which made a fair resolution on the merits impossible). Public policy does not favor maintaining a court action or holding a trial when a party's misconduct "threaten[s] to interfere with the rightful decision of the case." <u>Wyle v. R.J. Reynolds Indus., Inc.</u>, 709 F.2d 585, 591 (9th Cir. 1983).

The Court's need to manage its docket and the public's interest in expeditious resolution of litigation also favors dismissal. Time and judicial resources have already been spent on a motion for dismissal in this matter and resolving spoliation issues. <u>See</u> <u>Leon</u>, 464 F.3d at 958, n.5 (noting that public interest considerations weighed in favor of dismissal where "there was ample evidence of the time and resources spent in investigating and resolving spoliation issues"); <u>see</u> <u>Malone</u>, 833 F.2d at 131 (fact that district court was prevented from adhering to trail schedule supported dismissal). Proceeding to trial with the case would require additional time and judicial resources in order to address Plaintiff's intentional destruction of relevant evidence.


<u>**CONCLUSION**</u>


Defendants Lockheed Martin Operations Support, Inc. and Richard T. Dunn's MOTION FOR DISMISSAL SANCTION DUE TO

PLAINTIFF'S INTENTIONAL SPOLIATION OF EVIDENCE (ECF No. 63) is **GRANTED**.

This case is **DISMISSED WITH PREJUDICE** as to all remaining Defendants.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 21, 2014.



_/s/ Helen Gillmor_____

Helen Gillmor
United States District Judge

**MICHAEL V. ESPEJO v. LOCKHEED MARTIN OPERATIONS SUPPORT, INC.; RICHARD T. DUNN; BRANDO LADINES; REX LADINES,** Civ. No. 14-00095 HG-RLP; Order GRANTING Defendants Lockheed Martin Operations Support, Inc. and Richard T. Dunn's Motion for Dismissal Sanction Due to Plaintiff's Intentional Spoliation of Evidence (ECF No. 63)